UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOHN PACE                                                                                    PLAINTIFF

V.                                                             CIVIL ACTION NO.: 3:10cv460-DPJ-FKB

CITY OF BRANDON, MISSISSIPPI, ET AL.                                         DEFENDANTS

ORDER

This civil-rights case is before the Court on Defendants' Motion for Partial Summary

Judgment [68].  Having fully considered the parties submissions and the applicable law, the

Court finds that the motion should be granted.

I.        Facts/Procedural History

There is no dispute that members of the City of Brandon Police Department arrested

Plaintiff John Pace for driving under the influence of alcohol in the late evening hours of March

6, 2010.  After his arrest, Pace was uncooperative, and, according to his own memorandum, "was

mouthing off" to the officers.  The officers placed Pace in a holding room where an altercation

between Pace and Defendant Christopher W. Bunch occurred, resulting in injuries to Pace's face.

The parties tell differing stories about what happened behind the closed doors, and because

questions of fact remain regarding Bunch's actions, he is the only defendant not seeking

summary judgment.

In his Second Amended Complaint, Pace pursues federal claims under 42 U.S.C. § 1983

for alleged violation of his Fourth, Fifth, Sixth, Eighth and/or Fourteenth Amendment rights

related to excessive force/battery/assault and denial of medical treatment.  Pace levied these

claims against Officer Bunch, Bunch's superior officer Sergeant Josh Arnold, and against the

City of Brandon.  Pace also asserted a state-law claim of assault and battery and mentioned a

claim under Article III of the Mississippi Constitution of 1890.  Following Defendants' motion

for partial summary judgment, Pace conceded all of his claims addressed by the motion except

the supervisory liability claim against Sergeant Arnold.  This claim is the sole remaining dispute

before the Court on dispositive motion.  Personal and subject-matter jurisdiction exist, and the

Court is prepared to rule.

II.     Summary Judgment Standard

        Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil

Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

        The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact ."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility

determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

III.    Analysis

Pace contends that Sergeant Arnold violated § 1983, which precludes deprivation of "any rights . . . secured by the Constitution and laws" of the United States by a person acting under color of state law.  42 U.S.C. § 1983 (2006).  The right he asserts is the Fourth Amendment right to protection from unreasonable force.  To establish a Fourth Amendment excessive force claim, a plaintiff must show "(1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) that the excessiveness of the force was unreasonable."  *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).  Whether force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

In this case, there is no allegation that Arnold struck Pace or was even present when the altercation occurred.   And "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."  *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  For liability to exist "under § 1983 there must be some connection between the [supervising officer's] action and the alleged constitutional violation."  *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996) (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)).

To meet this test, Pace alleges that Arnold directed Officer Bunch to beat him.  If true, such conduct would at least establish the nexus between Arnold's own acts and the alleged

3

constitutional injury.  *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir.

2008) (recognizing supervisory liability under § 1983 when defendant "affirmatively participates

in the acts that cause the constitutional deprivation").

Arnold counters, however, that he is entitled to qualified immunity.  Qualified immunity

is a shield from individual liability for "'government officials performing discretionary functions

. . . as long as their actions could reasonably have been thought consistent with the rights they

are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "[Q]ualified immunity generally protects 'all

but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v.

Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the

defense.  *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).  In

determining whether qualified immunity exists in the summary judgment posture, the Court

"'looks to the evidence before it (in the light most favorable to the plaintiff) . . . .'" *McClendon*

*v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (quoting *Behrens v. Pelletier*, 516 U.S.

299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies.  "[A]

court addressing a claim of qualified immunity must determine first whether the plaintiff has

adduced facts sufficient to establish a constitutional or statutory violation."  *Collier v.*

*Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201

(2001)).  Second, if a violation has been alleged, the court must determine "'whether [the

officer's] actions were objectively unreasonable in light of clearly established law at the time of

4

the conduct in question.'" *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless all reasonable officials in the

defendant's circumstances would have then known that the defendant's conduct violated the

United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v.*

*Upshur Cnty., TX*, 245 F.3d 447, 457 (5th Cir. 2001).  Thus, "[a]n official is eligible for qualified

immunity even if the official violated another's constitutional rights." *Id.*  Whether the official

acted with objective reasonableness is an issue of law reserved for the court. *Williams v.*

*Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Finally, it is within the lower court's discretion to decide which prong of the qualified

immunity analysis to address first.  *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 555,

U.S. 223, 236 (2009)).  In particular, *Pearson* observed that "[t]here are cases in which it is plain

that a constitutional right is not clearly established but far from obvious whether in fact there is

such a right."  555 U.S. at 237.

Pace never responds to the qualified immunity argument and rests instead on his

contention that a jury could find Arnold directed a beating.  But assuming a constitutional

violation, Pace must still meet his burden of showing that Arnold's actions were objectively

unreasonable.  Pace makes no reference to this test.  And even if the Court were to take Pace's

arguments and place them in the context of a qualified immunity response, the arguments are too

speculative to meet his burden.

Viewing Arnold's statements in their undisputed context demonstrates that qualified

immunity applies.  There is no dispute that Pace was intoxicated, that he attempted to exit the

police cruiser after he was arrested, that he was loud and "mouthing off" to the officers during

booking, that he was placed in a holding cell where he continued to create a significant

disturbance, and that Arnold gave Bunch instructions to return to the cell and address the

situation.  According to Pace, Arnold admitted in a recorded statement that he told Bunch to

"take charge of this situation."  Pl.'s Resp. [71] at 2 citing Ex. E, Arnold Recorded Statement at

3.

Pace contends that this "take charge" statement was actually a direction "to assault the

Plaintiff . . . ."  *Id.* at 8.  It is important to note that Pace did not hear Arnold's instructions to

Bunch.  Thus, he crafts an argument out of Arnold's post-incident testimony, but Pace takes the

words out of context to fit the argument.  What Arnold admitted was as follows:

> I mean, again, he's going on and on and on—Chris [Bunch]—I told Chris I
> said—he had to get some more information from the guy—he [Defendant Bunch]
> had done screwed up the whole booking card.  I said I'm gonna tell you right
> now—you gonna take charge of this situation, your gonna go get him out of that
> cell, you're gonna tell him you're not gonna come back in here running your
> mouth no more.  I said, you blame me—tell him the Sergeant ain't gonna listen to
> this crap no more or he's gonna end up charging you with some more charges.
> Bring him back in here—you put him in that chair—you finish booking the
> man—get his stupid ass out to the jail now.  And—cause I ain't gonna lie—I was
> mad at Chris for allowing this to keep going on and on and on.  Chris walked over
> to the cell—and I told him if he's gonna keep running his mouth don't bring him
> out.

Arnold Recorded Statement at 3.  And his recorded statement is consistent with his deposition

testimony on this same point:

> I heard some banging going on.  I couldn't see from where I was seated what was
> happening.  I asked him [Officer Bunch] what was going on.  He said Mr. Pace
> was in there hitting his head on the [P]lexiglas[s] or hitting the [P]lexiglas[s].  I
> finally told him to get in there and—you know, I said, "Get in there, get this
> under control."

Defs.'s Mot. [68], Ex. E, Arnold Dep. at 25.

6

Pace cannot rebut Arnold's testimony as to what he actually said, and there exists no evidence that Arnold told Bunch to harm Pace in any way.  Similarly, Pace offers no evidence that Arnold and Bunch had some understanding that "take charge" really meant, go in and apply unreasonable force.  But Pace does contend that a jury could draw that conclusion because Arnold allegedly attempted to cover up the altercation after the fact, and because Arnold "was sick and tired of listening to [Plaintiff] run his mouth."  Pl.'s Resp. [71] at 8.  In other words, Pace asserts that Arnold's exasperation over the situation and the alleged attempt to hide the incident demonstrate that when Arnold gave the instruction, he was actually intending to convey an order to apply unreasonable force.[1]

Pace's argument is speculative at best and fails to address Arnold's claim to qualified immunity.  The Court assumes for summary judgment purposes that Arnold was tired of hearing Pace's disturbance, but that hardly proves that the order to get the situation under control was a directive to use unreasonable force.  Even assuming Arnold's words could be viewed as an order to use force, "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Pace makes too great a leap suggesting that the reasonable instruction to get the situation under control was a directive to

---

[1]Pace's Memorandum references no constitutional claims based on the alleged cover-up and instead offers the averments as circumstantial evidence of what Arnold meant.  He does, however, cite *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr*., a Third Circuit case holding that acquiescence is sufficient to create supervisory liability.  372 F.3d 572 (3d Cir. 2004).  Assuming Pace is actually offering an acquiescence theory, he has not attempted to show that such a theory is "clearly established" for qualified immunity purposes.  And in light of the subsequent decision in *Ashcroft v. Iqbal*, the Court finds that Pace has not met his burden.  556 U.S. 662, 1949 (2009) (suggesting in dicta that acquiescence would not create supervisory liability under   § 1983).

violate his rights.  And if Bunch used unreasonable force after receiving this benign instruction, it would not create liability for Arnold.

Ultimately, Pace must prove that "all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution . . . ." *Thompson*, 245 F.3d at 457.  Pace cannot meet this burden because he can neither dispute what Arnold claims to have said, nor establish that telling an officer to take control of an intoxicated and disruptive arrestee is objectively unreasonable.  As a matter of law, Pace fails to rebut qualified immunity.[2]

IV.   Conclusion

For the reasons stated, Defendants' Motion for Partial Summary Judgment is granted in its entirety.  The only remaining claims are those against Defendant Bunch.

**SO ORDERED AND ADJUDGED** this the 9th day of November, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[2]Even if this evidence could rise to a jury question, it remains too speculative for a reasonable jury to conclude that Arnold's actions in trying to control an admittedly unruly detainee were objectively unreasonable.